UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MINKA DANAN,

      Plaintiff,

v.                    CASE No. 8:12-CV-7-T-27TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[2]   Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, I recommend that the decision be affirmed.

---

      [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action.  See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

      [2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was forty-five years old at the time of the administrative hearing and who has a high school education that was completed in Germany, has worked as a cable maker, forklift operator, and machine operator (Tr. 37, 38, 59, 156). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on September 27, 2008, due to high blood pressure and arthritis in her hands and back (Tr. 155). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "cervicothoracic lumbar sprain and strain and arthralgias" (Tr. 17). He concluded that, with these impairments (Tr. 19),

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except with limitations for occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing, walking and/or sitting for six hours in an eight-hour workday; and occasionally climbing ramps and stairs, balancing, stooping,

kneeling, crouching and crawling, but never climbing ladders, ropes or scaffolds.

The law judge found, based on the testimony of a vocational expert, that these limitations did not preclude the plaintiff from returning to prior employment as a cable maker (Tr. 24, 25).[3] The law judge therefore ruled that the plaintiff was not disabled (Tr. 25). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.[4]

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or

---

[3]Although not mentioned in the law judge's decision, the vocational expert testified the plaintiff could also perform other jobs that exist in significant numbers in the national economy. such as toll collector, produce inspector, and mail room clerk (see Tr. 59).

[4]The plaintiff asserts that the record contains evidence that was first submitted to the Appeals Council, but no such evidence is reflected in the administrative record (see Tr. 4).

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff argues that she became disabled in September 2008, when she hurt her back while lifting cases at work (<u>see</u> Tr. 221). As indicated, the law judge found that the plaintiff could perform a range of light work (Tr. 19). The plaintiff challenges, in a conclusory manner, the law judge's credibility finding, and his determination of her residual functional capacity (Doc. 15). Furthermore, the plaintiff argues that the law judge failed

to give proper weight to the opinions of her treating physicians. Finally, the plaintiff contends that the law judge failed "to consider the combined effect of all [of her] impairments" (id., p. 9). None of the arguments is meritorious.

At the outset, it is noted that the plaintiff's memorandum fails to comply with the court's scheduling Order, which directs that each of the "discrete challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 14, p. 2). The scheduling Order advises that, "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development" (id.). Each of the plaintiff's arguments is conclusory and lacks pertinent supporting record citations. These deficiencies, in themselves, warrant rejection of the plaintiff's claims (see id.). In all events, the plaintiff's arguments are not meritorious.

A. The plaintiff's first and final contentions, which concern the law judge's credibility determination, are addressed together. First, the plaintiff argues generally that the law judge erred in discrediting her subjective complaints. In her final argument, the plaintiff contends

specifically that the law judge improperly considered her daily activities in discounting her credibility.

The plaintiff testified at the hearing that she cannot work due to pain in her neck, back and hands (Tr. 40). She specified that she cannot walk more than five to ten minutes at a time, and that she can only lift a couple of pounds (Tr. 42, 43-44). Additionally, the plaintiff testified that she cannot open anything with her hands or even brush her hair (Tr. 40-42). The plaintiff also said that she is depressed (see Tr. 42). In this regard, the plaintiff testified that she cries a lot, dislikes being around people, and that medication is not making her feel better (Tr. 47-48). The plaintiff's son testified similarly that the plaintiff is sad and, physically, she cannot walk for long or lift much weight (see Tr. 50-55).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that

condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 19-20). He even cited Landry v. Heckler (Tr. 20). This demonstrates that the law judge employed the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Furthermore, the law judge recounted the plaintiff's and her son's testimony concerning the plaintiff's alleged pain and limited functioning (Tr. 20). After considering this testimony, along with the objective medical evidence, the law judge restricted the plaintiff to a range of

light work (Tr. 19). Significantly, the law judge rejected the physical residual

capacity assessment by a nonexamining reviewing physician who opined that

the plaintiff could perform medium work, noting that a more restrictive

residual functional capacity was warranted partly because of the plaintiff's

subjective complaints of pain (Tr. 24; see Tr. 265-72). Thus, the law judge

did not totally reject the plaintiff's and her son's testimony, but accepted to

a substantial extent the plaintiff's allegations of limitation.   Further, in

declining to credit fully the plaintiff's subjective complaints, the law judge

explained (Tr. 20):

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be
> expected to cause the alleged symptoms; however,
> the claimant and her son's statements concerning
> the intensity, persistence and limiting effects of
> these symptoms are not credible to the extent they
> are inconsistent with the above residual functional
> capacity assessment for the reasons detailed below.

The plaintiff asserts that this quotation is simply boilerplate (Doc. 15, p. 4).

However, it directly addresses the application of the Eleventh Circuit pain

standard.  Moreover, the law judge did not simply state that the plaintiff and

her son are not credible, but rather he expounded on his credibility

determination.   Specifically, the law judge, after reviewing the medical

evidence in detail (see Tr. 21-24), explained (Tr. 21):

> The claimant's longitudinal medical history is not
> necessarily consistent with her allegations of
> disability.   Despite the complaints of allegedly
> disabling impairments and associated symptoms,
> the record indicates that the claimant's essentially
> routine and/or conservative treatment, including
> over-the-counter medications (Tylenol and Aleve),
> has been generally successful in controlling those
> impairments and associated symptoms.

Additionally, the law judge specified that, "despite the [plaintiff's] complaints

of problems holding or handling things, a consultative physical examination

revealed normal bilateral hand strength of 5/5 and fine manipulation in both

hands, as well as normal x-rays of both hands" (Tr. 24).   The law judge also

did not fully credit the plaintiff's allegations of disabling mental impairments,

finding that she had no more than mild limitation in activities of daily living,

social functioning, and maintaining concentration, persistence or pace (Tr.

19).   In making this finding, the law judge considered that the plaintiff had

not undergone any formal mental health treatment, she had only been

prescribed psychotropic medications by her primary care physician, and her

symptoms improved with medication and the arrival of her daughter from

-10-

Bosnia (id.). The law judge, moreover, said that the plaintiff's activities of

daily living were not consistent with her testimony of disabling mental and

physical limitations, noting that the plaintiff reported (Tr. 24):

> performing her own personal hygiene and
> grooming, albeit with some help from her daughter;
> doing a little cooking; doing pet care; reading
> books; writing songs; watching television; talking
> on the telephone; managing finances; and
> following written and/or spoken instructions.

This explanation is sufficient to discount the plaintiff's subjective complaints

to the extent the law judge did so. See Heppell-Libsansky v. Commissioner

of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

In challenging the law judge's credibility determination, the

plaintiff argues that it is inappropriate to consider her daily activities, medical

records, and treatment history in determining credibility (Doc. 15, p. 5). The

plaintiff does not cite in this argument to any legal authority in support of this

contention (see id.), in violation of the scheduling Order (Doc. 14, p. 2).

Moreover, the plaintiff's contention is erroneous.

Thus, the law judge may consider the plaintiff's daily activities,

along with the other evidence in the record, in determining credibility. See

Macia v. Bowen, 829 F.2d 1009, 1011-12 (11th Cir. 1987); Couch v. Astrue, 267 Fed. Appx. 853, 856 (11th Cir. 2008). In fact, the regulations direct that a plaintiff's daily activities are to be considered in evaluating the credibility of the reported symptoms. See 20 C.F.R. 404.1529(c)(3)(i), 416.929(c)(3)(i). Furthermore, the law judge appropriately considered inconsistencies in the medical records and her conservative treatment history in determining credibility. See 20 C.F.R. 404.1529(a), (c)(3)(v); SSR-96-7P, 1996 WL 374186 at *6 (noting that longitudinal medical records can be probative evidence in determining credibility).

The plaintiff contends next that, assuming the law judge's reasons for discounting her credibility are acceptable, they are not supported by substantial evidence "because all of the substantial evidence corroborates [the plaintiff's] allegations" (Doc. 15, p. 5). The plaintiff once again fails to provide any record citations in support of this argument. Consequently, this contention is frivolous, since the plaintiff cannot plausibly show that the evidence substantiates her allegations without specifying any of that evidence.

In all events, the law judge's credibility finding is supported by substantial evidence.   Thus, with regard to her medical history, the law judge accurately summarized the medical records which show that, although the plaintiff had some decreased spinal range of motion due to tenderness and muscle spasms, she typically exhibited a normal gait, normal motor strength, and negative straight leg raising, and the absence of neurological defects, sensory deficits, muscle atrophy or wasting (see Tr. 21-23; Tr. 219, 222-23, 234-36, 287-88, 315, 320-21, 341).   Furthermore, during a comprehensive examination by consultative examiner Dr. Bhupendra Kumar Gupta, the plaintiff sat, stood, walked, and got on and off the examination table "with ease"; her gait was steady; she was able to dress and undress herself; and she could open and close doors by turning knobs (Tr. 235).   The plaintiff further demonstrated excellent grip strength in both hands, and manipulation in both hands was fine (Tr. 236).   Moreover, diagnostic testing did not reveal disabling impairments, either.   Thus, x-rays of the lumbrosacral spine and both hands were "within normal limits" (Tr. 240).   Further, x-rays of the thoracic spine showed minimal generative changes, and an MRI of the same area revealed only some degenerative joint disease, predominantly at T10-12.

(see Tr. 223). Additionally, the law judge stated correctly that the medical records show relatively conservative treatment, such as medication, physical therapy, trigger point injections, stretching, and the use of heat (see Tr. 21-22, 219, 223, 250, 288, 315, 335).

The record also supports the law judge's findings of only mild impairments in the plaintiff's mental functioning. As the law judge noted, the plaintiff had not received any treatment from a mental health provider. Further, after receiving psychotropic medication from her primary physician and the arrival of the plaintiff's daughter in the United States from Bosnia, the plaintiff's psychological state greatly improved (see Tr. 314, 326, 332, 333, 335). Ultimately, Dr. Michael Davis remarked that the plaintiff's "anxiety [had] resolved" and the plaintiff's crying decreased to once a week (Tr. 335). Dr. Davis also concluded that the plaintiff's insomnia was due to "mostly poor sleep maintenance" (id.). Notably, the plaintiff did not even mention her alleged mental impairments in her argument on this issue.

In sum, the law judge evaluated the credibility of the plaintiff's testimony under the correct standards. Moreover, he provided adequate reasons for discounting to some extent the plaintiff's and her son's testimony.

In order to prevail on this issue, the plaintiff must establish that the evidence compels a conclusion that the plaintiff and her son are entirely credible. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. Since the plaintiff has not cited any evidence on this issue, she obviously has not made the required showing.

B.   The plaintiff's second argument is that the law judge improperly discounted the opinions of her treating medical sources and erroneously substituted his own opinion for those of the medical experts (Doc. 15, p. 6). These contentions are unpersuasive.

Specifically, the plaintiff argues that the law judge erred in affording only limited weight to the opinions of treating physicians Dr. Stuart A. Goldsmith and Dr. Davis (id., p. 7). Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

-15-

On November 17, 2009, Dr. Davis, a general practitioner, completed on the plaintiff's behalf a Medical Report of Physical and Mental Work-Related Impairments ("medical form") (Tr. 260-64). Dr. Davis opined that the plaintiff could sit less than two hours and stand or walk four hours in an eight-hour workday, and could carry no more than ten pounds occasionally (Tr. 261). Dr. Davis opined further that the plaintiff could occasionally engage in postural movements; she had "significant limitations with reaching, handling, or fingering"; had limited movement of her head; and could only occasionally speak (Tr. 261, 262). Additionally, Dr. Davis opined that the plaintiff's pain would frequently interfere with her ability to concentrate and that she was likely to be absent about four days per month (Tr. 260, 262). Dr. Davis attributed these limitations to "thoracic and lower back pain with hypertonic muscles," and added that "psychological factors affect[] [her] physical condition" (Tr. 260). Dr. Davis speculated that these limitations began in September 2008, and were likely to last twelve months (Tr. 260, 262).

With regard to her mental state, Dr. Davis opined that the plaintiff is likely suffering from PTSD from her exposure to the Bosnian War

(Tr. 262). Dr. Davis opined that the plaintiff had a fair to poor ability to deal with work stress and maintain regular attendance at work, and a fair ability to behave in an emotionally stable manner (Tr. 263). Dr. Davis did not opine when these mental limitations began, or how long they were expected to last (Tr. 264).

The law judge discussed in detail Dr. Davis's records (see Tr. 18, 22) and acknowledged Dr. Davis's opinion that the plaintiff could perform less than the full range of sedentary work activities (Tr. 23). The law judge, while noting that the plaintiff had a treating relationship with Dr. Davis, gave "little weight" to Dr. Davis's opinion (id.).

At the outset it is noted that the medical form was conclusory in nature. Thus, Dr. Davis's opinions consisted primarily of checkmarks on a form, and Dr. Davis did not explain in any meaningful way his opinions of extreme functional limitations (see Tr. 260-64). For example, there is no explanation why the plaintiff cannot sit for more than twenty minutes at a time and less than two hours in a workday. The conclusory nature of Dr.

Davis's opinions alone provides a recognized basis for discounting the medical forms. <u>Lewis</u> v. <u>Callahan</u>, <u>supra</u>.[5]

Moreover, the law judge gave the following detailed explanation for discounting Dr. Davis's opinion (Tr. 23-24):

> First, Dr. Davis's opinion appears to be somewhat internally inconsistent and is, therefore, rendered less than persuasive. Specifically, Dr. Davis limited the claimant to standing and/or walking for "about 4 hours" in an eight-hour workday, but also stated that "walking is ok". Additionally, Dr. Davis's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled and he did not specifically address this weakness. Significantly, he generally found only limited range of motion in the spine due to some pain with muscle spasm and sacroiliac tenderness, but with a consistently normal gait. Also, notations indicated that trigger point injections helped. Second, Dr. Davis's opinion appears to rest at least in part on an assessment of impairments (depression, anxiety, and PTSD) outside his area of expertise. Significantly, Dr. Davis is not a

---

[5]It is also noted that Dr. Davis completed that medical form after only his second visit with the plaintiff. Therefore, when Dr. Davis completed the medical form, he clearly lacked a "detailed, longitudinal picture of [the plaintiff's] medical impairments," 20 C.F.R. 416.927(c)(2), which is the rationale for affording treating physician opinions greater weight. <u>See</u> <u>Lewis</u> v. <u>Callahan</u>, <u>supra</u>, 125 F.3d at 1440; <u>Bloodsworth</u> v. <u>Heckler</u>, 703 F.2d 1233, 1240 (11th Cir. 1983)(a treating physician's opinions are entitled to greater weight due to the physician's "familiarity with the patient's injuries, course of treatment, and responses over a considerable length of time").

-18-

specialist in psychology or psychiatry. Also, it appears that Dr. Davis apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Furthermore, Dr. Davis's opinion is not consistent with the evidence of record when considered in its entirety. Specifically, while orthopedic examinations in November 2008 found some decreased thoracolumbar spine range of motion with paravertebral spasm and pain, the claimant had full cervical spine range of motion, normal range of motion in the upper extremities with normal motor strength of 5/5, a normal gait, negative straight leg testing, normal reflexes in the lower extremities with no signs of weakness, and no sensory deficits. Additionally, x-rays and magnetic resonance imaging (MRI) of the thoracic spine demonstrated only some minimal degenerative joint disease predominately in the area of the lower T10-12 levels, and x-rays of the lumbar spine showed no signs of spondylolysis, spondylolisthesis or compression fracture. Further, in September 2009, x-rays of the hands and lumbrosacral spine were within normal limits. Moreover, it is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Also, the doctor was presumably paid for

the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored. Finally, the issue of disability is an issue reserved to the Commissioner.

This explanation amply provides good cause for discounting Dr. Davis's opinion. Lewis v. Callahan, supra,

In support of the plaintiff's contention that the law judge discounted erroneously Dr. Davis's opinion, she argues that the law judge "did not point out which medical evidence is inconsistent with" Dr. Davis's opinion, and asserts in a conclusory manner that "[t]here is no objective evidence ... that refutes the findings" of Dr. Davis (Doc. 15, pp. 6, 7). This contention is frivolous. The law judge, as quoted in detail above, specified many objective findings which are inconsistent with Dr. Davis's opinion that the plaintiff could perform less than sedentary work. In particular, it is noted that many of these normal findings on examination are reflected in Dr. Davis's progress notes (see, e.g., Tr. 314-15).

Moreover, the plaintiff's argument on this issue is again devoid of any citations to the medical evidence. Accordingly, the plaintiff's assertion that there is no evidence to counter the opinions of the plaintiff's

treating sources (Doc. 15, p. 6) is totally unsupported. Thus, the plaintiff has not demonstrated that the evidence compels the finding that Dr. Davis's opinions are entitled to considerable or substantial weight.

Further, the plaintiff contends that the law judge "erroneously speculated as to how Dr. Davis came to his conclusions" (id., p. 7). The law judge stated in discounting Dr. Davis's opinion that Dr. Davis "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant" (Tr. 23). That was a reasonable conclusion based on the record evidence. Thus, Dr. Davis attributed the plaintiff's limitations to back pain and psychological symptoms (Tr. 260), which are necessarily based on the plaintiff's subjective complaints. Moreover, Dr. Davis stated that the opined limitations related back to September 2008, when the "[b]ack pains began" (Tr. 262). This appears to be a statement made by the plaintiff to Dr. Davis. Further buttressing this conclusion is the circumstance that Dr. Davis apparently did not treat the plaintiff in 2008, as the administrative record does not include any treatment records from Dr. Davis that year. Therefore, the law judge's conclusion that Dr. Davis relied heavily on the plaintiff's subjective reports is supported by substantial evidence.

The plaintiff also challenges the law judge's rejection of Dr. Goldsmith's opinion (Doc. 15, p. 7). However, the law judge also adequately evaluated this opinion.   Dr. Goldsmith completed for the plaintiff in November and December 2008, Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Forms (Tr. 294-95, 297-98).   Dr. Goldsmith cursorily wrote on the forms "No work" (Tr. 295, 297).   No functional limitations are identified (id.). The diagnosis, which is virtually illegible, appears to be a lumbar sprain caused by a workplace accident (see Tr. 298). Notably, at that time, Dr. Goldsmith stated that the plaintiff had not reached maximum medical improvement (Tr. 295, 297), and he did not specify on the forms any permanent restrictions.

In the first place, Dr. Goldsmith's opinion is merely a conclusory comment on a form indicating that the plaintiff cannot work for a period of time, without any meaningful information regarding the medical basis for this opinion. Thus, the conclusory nature of Dr. Goldsmith's opinion is enough, by itself, to justify the law judge to discount it, especially since it did not even opine that the plaintiff would be unable to work for the requisite twelve-month period. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v.

-22-

Commissioner of Social Security, 252 Fed. Appx. 311, 313-14 (11th Cir.
2007). Furthermore, Dr. Goldsmith's opinion of "no work" is not even a
medical opinion, but rather an opinion on a vocational issue reserved to the
Commissioner. 20 C.F.R. 404.1527(d)(1), 416.927(d)(1); 404.1527(d)(3),
416.927(d)(3).

Regardless, the law judge found Dr. Goldsmith's opinion
persuasive for the period of time shortly after the work-related injury, and
explained that he rejected the opinion as evidence of permanent disability for
the following reasons (Tr. 23):

> First, at the evaluation on November 18, 2008, Dr.
> Goldsmith opined that the claimant was "to
> continue being out of work" until she returned in
> one month, but stated that he "expected that she
> should be able to be sent back to full active duty at
> that time." Second, at the follow-up appointment
> on December 4, 2008, physical and neurological
> examinations were essentially normal and
> treatment remained conservative. Furthermore, Dr.
> Goldsmith's opinions are not consistent with the
> evidence of record as a whole. Specifically, in
> September 2009, x-rays of the hands and
> lumbrosacral spine were within normal limits.
> Additionally, in 2009 and 2010, physical
> examinations revealed only some decreased
> cervical and thoracic spine range of motion in
> extremes due to pain with spasms and tenderness in

the sacroiliac joints, but with a normal gait and
continued conservative treatment.   Finally, the
issue of disability is reserved to the Commissioner.

The plaintiff has not undermined any of the reasons given by the

law judge for discounting Dr. Goldsmith's opinions (see Doc. 15, p. 7).

Therefore, this contention is meritless.

Finally, the plaintiff mentions a Florida Workers' Compensation

Uniform Medical Treatment/Status Reporting Form (Tr. 217), completed in

October 2008  by an unknown medical source.  This form appears to have

been completed by a nurse practitioner who saw the plaintiff on one occasion

(see Tr. 218).  The form indicated that, due to a back sprain, the plaintiff

should alternate sitting and standing; she should not lift above shoulder level,

bend, or twist; and she should not lift greater than two pounds (id.).  The form

states that the plaintiff had not reached maximum medical improvement and

does not indicate any permanent limitations (Tr. 217, 218).

The law judge discussed this opinion in his decision, but he "did

not find the opinion persuasive for the following reasons" (Tr. 22):

First, it is not clear if the provider is an acceptable
medical source under the Regulations (20 CFR
404.1513 and 416.913) or if the provider had a

-24-

treating relationship with the claimant. Second, the provider indicated that the claimant had not achieved maximum medical improvement (MMI). Furthermore, the opinion is not well supported by medically acceptable clinical and laboratory techniques and is not consistent with the other substantial evidence of record. Specifically, the evidence of record as a whole indicates only some decreased spinal range of motion with some pain, tenderness and muscle spasms. Additionally, diagnostic studies have indicated only some DJD, but no signs of spondylolysis, spondylolisthesis or compression fracture. Moreover, treatment has remained conservative, with no history of surgical intervention. Finally, the issue of disability is an issu[e] reserved to the Commissioner.

This explanation provides good cause for discounting the opinion of this medical source, especially considering that the law judge was not required to give this opinion significant weight. See 20 C.F.R. 404.1513(a), 416.913(a) (nurse practitioner is excluded from the list of "acceptable medical sources" whose opinions are to be considered in determining the existence of an impairment).

The plaintiff also argues, generally, that the opinions of the treating physicians should have been accepted because the law judge "was presented with a large record with numerous exhibits, many documenting the

Claimant's impairments and disabilities" (Doc. 15, p. 6). However, the plaintiff does not identify any evidence in support of this assertion. As previously pointed out, under the substantial evidence standard, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, supra, 386 F.3d at 1027. Especially since the plaintiff has cited no record evidence on this point, she has obviously failed to carry her burden to show that the evidence compels a conclusion that the law judge's assessment of her treating doctors' opinions is incorrect.

The plaintiff also contends that "all of these treating opinions are consistent with one another" and, therefore, they should be credited (Doc. 15, p. 7). However, the opinions are not consistent in pertinent respects. Thus, Dr. Davis opined that the plaintiff's limitations were likely to last twelve months, and partly attributed them to psychological factors, whereas Dr. Goldsmith indicated that the plaintiff had only a temporary, physical disability. Therefore, the argument that "all of these treating opinions are consistent with one another" is meritless.

Finally, the plaintiff argues that, by partially rejecting the treating physician's opinions, the law judge improperly substituted his opinion for those of the medical experts (id., pp. 6, 7). The law judge, however, was not rendering a medical opinion. Rather, he was weighing and evaluating the medical evidence, which is his assigned responsibility as an administrative fact-finder.

C.   The plaintiff argues next that the law judge erred in determining the plaintiff's residual functional capacity (id., pp. 7-9). The crux of this argument is that the law judge failed to include in her residual functional capacity the limitations opined by Drs. Goldsmith and Davis (id., pp. 8, 9).   As just explained, the law judge discounted those opinions. Moreover, the law judge's determinations were valid, and supported by substantial evidence. Consequently, the law judge did not have to incorporate in his finding of the plaintiff's residual functional capacity opinions that he had discounted. Cf. Davis-O'Brien v. Astrue, 415 Fed. Appx. 137, 140 (11th Cir. 2011).

Further, the plaintiff argues that the law judge should have "consider[ed]" her ability to understand, follow instructions, and respond to

supervision, coworkers, and work pressure (Doc. 15, p. 9). The law judge,
however, did consider the plaintiff's mental functioning, and found that her
mental impairments "do not cause more than minimal limitation in the
claimant's ability to perform basic mental work activities" (Tr. 18). See 20
C.F.R. 404.1545(a)(1) (residual functional capacity includes "mental
limitations that affect what you can do in a work setting"). Accordingly, the
law judge appropriately did not include any mental limitations in the
plaintiff's residual functional capacity. Notably, the plaintiff did not develop
any argument specifying a mental functional limitation that should be
included in the plaintiff's residual functional capacity. Therefore, this
contention is meritless.

The plaintiff also contends that the law judge's determination of
her abilities to stand, walk, and sit are unclear (Doc. 15, p. 9). Specifically,
the plaintiff argues that, "[i]t appears from the ALJ's decision that her
abilities to stand, walk, and sit combined are limited to six hours total" (id.)
(emphasis omitted). The residual functional capacity states that the plaintiff
may do "standing, walking and/or sitting for six hours in an eight-hour
workday" (Tr. 19). The "or" portion of this finding means that the plaintiff

is physically capable of doing each of these exertional activities for six hours in an eight-hour workday. Therefore, contrary to the plaintiff's argument (Doc. 15, p. 9), the pertinent hypothetical question to the vocational expert was consistent with this residual functional capacity, as the vocational expert was directed to assume that the plaintiff could "[s]tand or walk for approximately six hours per an eight-hour work day .... [and] [s]it for approximately six hours per an eight-hour workday with normal breaks" (Tr. 58).

D. The plaintiff's final argument is that the law judge failed to consider "the combined effect of all [her] impairments" (Doc. 15, p. 9). This contention is baseless.

A law judge must not only consider every impairment, but must consider the combined effect of the impairments. Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985). The law judge recognized in the decision that he had to consider the combined effects of the plaintiff's impairments, stating that, in making the disability determination, he had to consider "whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe'" (Tr. 16). He made a similar

statement regarding the listings of impairments (id.).  And he said that, in determining the plaintiff's residual functional capacity, he "must consider all of the claimant's impairments, including impairments that are not severe" (Tr. 17).

The plaintiff argues that the law judge did not "make an explicit comparison as to how the [plaintiff's] impairments interact with each other" (Doc. 15, p. 10).  What the plaintiff means by this cryptic assertion is unclear. If she means that the law judge should have identified the functional limitations from each impairment and then indicated how they interact with each other, she has provided no authority requiring such a mode of analysis. All that the law judge is required to do, in determining the plaintiff's residual functional capacity, is consider the combined effect of the plaintiff's impairments, as the law judge specifically noted (Tr. 16-17).  That is what the law judge did here in making his finding of the plaintiff's residual functional capacity.  The law judge, therefore, did not err in that respect.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
DATED: MARCH 15, 2013    UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).